UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAGATH ASHIRWAD, an individual; FERAIDOON ATHARI, an individual; JAMES HOGAN, an individual; ERIC LOPEZ, an individual; JEREMIAH MARCHESANO, an individual; OSCAR MARTINEZ, an individual; EDWARD MOORE, an individual; and DAVID SHERVEY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC, a Delaware Limited Liability Company; CHARTER COMMUNICATIONS, INC., a Delaware Corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 21-cv-02101-AJB-DDL<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AS TO PLAINTIFFS JAGATH ASHIRWAD, ERIC LOPEZ, AND JEREMIAH MARCHESANO**<br><br>**(Doc. No. 19)** |

Before the Court is Defendants Charter Communications, LLC and Charter Communications, Inc.'s (collectively, "Charter" or "Defendants") motion to compel arbitration as to Plaintiffs Jagath Ashirwad ("Ashirwad"), Eric Lopez ("Lopez"), and

Jeremiah Marchesano ("Marchesano") (collectively, "Plaintiffs"). (Doc. Nos. 24, 26.) Plaintiffs filed a response,[1] to which Defendants replied. For the following reasons, the Court **GRANTS** Defendants' motion. (Doc. No. 19.)

## I.   BACKGROUND

Charter is a telecommunications company that employed Plaintiffs as sales representatives in California. Ashirwad worked for Charter from 2009 until 2021, Lopez from 2011 to 2018, and Marchesano from 2012 to 2017.

In October 2017, Charter announced to its employees that it would begin using a dispute resolution program called Solution Channel to resolve employment-based legal disputes. Charter made this announcement via an email that Charter's Executive Vice President of Human Resources, Paul Marchand, sent to all Charter employees' email accounts on October 6, 2017. The email announcement stated:

> By participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim. More detailed information about *Solution Channel* is located on Panorama. Unless you opt out of participating in Solution Channel within the next 30 days, you will be enrolled. Instructions for opting out of *Solution Channel* are also located on Panorama.

(Doc. No. 19-3 at 3 (italics in original).)

The email also contained a link to the Solution Channel webpage, which included a reference and link to Charter's Mutual Arbitration Agreement ("MAA") and the Solution Channel Program Guidelines. (Doc. Nos. 19-2 at 3; 19-4; 19-5.) The Solution Channel webpage included instructions on how to opt out of the program and warned employees that they would be automatically enrolled and considered to have consented to the MAA if

---

[1] In challenging Defendants' motion to compel, Plaintiffs filed a separate statement of objections in violation of this Court's chambers rules. (Doc. No. 29.) *See* Battaglia Civ. Case. Proc. § II.A ("**Objections relating to the motion should be set forth in the parties opposition or reply. No separate statement of objections will be allowed**.") (emphasis in original). The Court issued a Notice of Discrepancy, informing Plaintiffs of the violation and striking the objection from the record. (*Id.*) Plaintiffs chose not to seek amendment of their opposition to include their objections.

they did not opt out within designated time. (Doc. Nos. 19-2 at 3–4.) The opt-out instruction included a link that routed to an opt-out webpage where an employee could enter their name, check a box stating, "I want to opt out of Solution Channel[,]" and save their selection. (Doc. No. 19-6 at 2.). Employees also had the ability to print the page for their personal records. (*Id.*)

Plaintiffs (along with five others who opted out of the Solution Channel) filed a wage and hour Complaint against Charter in San Diego County Superior Court. Charter thereafter removed the case to federal court. Before the Court is Charter's motion to compel arbitration as to Plaintiffs Ashirwad, Lopez, and Marchesano only. This Order follows.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the enforcement of arbitration agreements involving commerce. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013).[2] The Supreme Court has enunciated a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."). "The FAA 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original). Accordingly, the court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio*

---

[2] Unless otherwise indicated, all internal citations, quotations, and alterations are omitted from the citations in this Order.

*Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citation omitted).

The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. District courts apply state law principles of contract formation and interpretation in determining which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally. *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, courts are directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

### III.   DISCUSSION

Defendants argue that Plaintiffs entered into an enforceable arbitration agreement with Charter, and that the agreement covers the disputes at issue here. (Doc. No. 19-1 at 8.) Defendants therefore ask the Court to enforce the agreement and compel Plaintiffs to arbitrate their claims. (*Id.*) Plaintiffs contend that Defendants have waived their right to compel arbitration, that Defendants have not shown that Plaintiffs assented to the agreement, and that the agreement is unenforceable because it is unconscionable. (Doc. No. 24 at 5.) The Court discusses these arguments in turn.

**A. Defendants Did Not Waive Their Right to Arbitration**

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). The Ninth Circuit has noted, however, that "any examination of whether the right to compel arbitration has been waived must be

4

conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1125 (9th Cir. 2008). "Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." *Martin*, 829 F.3d at 1124; *accord St. Agnes Med. Ctr. v. PacifiCare of California*, 31 Cal. 4th 1187, 1195 (2003) ("Our [California] state waiver rules are in accord. State law, like the FAA, reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims.").

In *Cox*, the Ninth Circuit relied on California Supreme Court precedent to determine whether arbitration has been waived. *Cox*, 533 F.3d at 1124 (citing *St. Agnes*, 31 Cal.4th at 1196). To determine waiver in such cases, the court considers the following factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Id.*

In Plaintiffs' view, Defendants acted inconsistently with the right to arbitrate because they waited more than 8 months after the lawsuit was filed to compel arbitration, filed an Answer, removed this case to federal court, served initial disclosures, participated in case management conferences, and agreed to amending the scheduling orders in this case. (Doc. No. 24 at 12.) The Court disagrees.

Applying the factors relied on in *Cox*, the Court does not find that any of them support a finding of waiver in this case. To begin, Defendants' actions were not inconsistent with the right to arbitration. Removal to federal court does not generally evince abandonment of arbitration rights. *See Paxton v. Macy's W. Stores*, Inc., No. 118CV00132LJOSKO, 2018 WL 4297763, at *11 (E.D. Cal. Sept. 7, 2018). And although

Defendants did not file their motion to compel arbitration until 8 months after being served with the Complaint, they raised the arbitration agreement as an affirmative defense in their Answer to Plaintiffs' Complaint. (Doc. No. 2 at 6.) Defendants thus promptly raised and notified Plaintiffs of their right to demand arbitration.

As to Defendants' exchange of initial disclosures, attendance in case management conferences, and cooperation with Plaintiffs regarding scheduling matters, the Court also does not find these acts inconsistent with the right to arbitrate. Defendants were obliged, under the Local Rules, to proceed with the litigation process because of the five other plaintiffs in this action who are not subject to the Solution Channel. Defendants also submitted their counsel's declaration, attesting to the following:

> From the beginning of this lawsuit, Charter has consistently asserted it right to arbitration – in its answer, in the parties' joint Rule 26(f) report, in its confidential ENE brief, and at case scheduling conferences – and notified Plaintiffs of its intent to move to compel early in the case if they would not stipulate to arbitration.

(Doc. No. 26-1 at 3.) Defendants have also "objected to responding to discovery or producing documents regarding Ashirwad, Lopez, and Marchesano, and has only responded and produced documents as to the five other plaintiffs who opted out of Solution Channel." (*Id.*)

Under these circumstances—where Defendants raised its right to arbitration in their Answer and again in subsequent communications to Plaintiffs, engaged in other litigation procedure only insofar as it was obligated to because of other plaintiffs who are not subject to the arbitration agreement, and filed a motion to compel arbitration without seeking any other relief on the merits—the Court finds Defendants have not undertaken acts inconsistent with the right to arbitrate.

The Court also finds the remaining factors weigh in favor of finding that Defendants have not waived their right to arbitrate. Factors 2 through 5, "which have to do with the invocation of the litigation machinery and it use," *Cox*, 533 F.3d at 1126, militate in favor of Defendants because, as previously discussed, they promptly notified Plaintiffs of their

intent to compel arbitration and did not seek adjudication of the merits of the case prior to filing the instant motion. Defendants also do not seek arbitration close to the trial date. Indeed, no trial date is yet set. And to the extent Defendants have participated in discovery, it has been limited to the other plaintiffs who are not subject to arbitration. For these same reasons, the Court also finds Plaintiffs have not been prejudiced by the timing of Defendants' motion to compel.

Accordingly, upon consideration of the foregoing factors, the Court finds that Defendants have not waived their right to enforce the arbitration agreement.

### B. There Exists an Arbitration Agreement Between Plaintiffs and Defendants

Next, Plaintiffs assert that Defendants have not shown that Plaintiffs consented to the arbitration agreement. Mutual consent is a necessary element to contract formation. Cal. Civ. Code § 1550. Consent to an arbitration agreement can be express or implied in fact. *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000).

Defendants argue that as to Ashirwad and Marchesano, they expressly consented to binding arbitration when they submitted applications for other Charter positions. (Doc. No. 19-1 at 18–19.) In support, Defendants filed the Charter applications Ashirwad and Marchesano submitted, which shows that they both affirmatively agreed to be bound to the MAA. (Doc. Nos. 19-2 at 5–7; 19-14; 19-15.) Plaintiffs did not dispute these points in their opposition, and thus, the Court deems the issue waived. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.3 (9th Cir. 2005) (holding that plaintiff "abandoned her other two claims by not raising them in opposition to the [defendant]'s motion for summary judgment"); *Larson-Valentine v. Travelers Com. Ins. Co.*, No. 19-CV-1209-GPC-AGS, 2019 WL 3766562, at *1 (S.D. Cal. Aug. 9, 2019) ("Plaintiff did not file an opposition. Therefore, Plaintiff's failure to oppose constitutes a waiver or abandonment of the issues raised in Defendant's motion."). There being no dispute that Ashirwad and Marchesano expressly agreed to the MAA in their job applications, the Court finds mutual consent to the MAA established here.

The remaining question then is whether Lopez also consented to the arbitration agreement. Defendants argue that Lopez impliedly consented to the Solution Channel and the MAA because he received the email announcement of the program but did not opt out of the program within the specified time.[3] (Doc. No. 19-1 at 15–18.) Plaintiffs contend that the email announcement did not sufficiently incorporate by reference the MAA, and thus, cannot be the basis for a valid contract. (Doc. No. 24 at 14.) In support, Plaintiffs cite *Avery v. Integrated Healthcare Holdings, Inc.*, which provides that for the terms of another document to be incorporated into the one executed by the parties, "the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." 218 Cal. App. 4th 50, 66 (2013).

Application of *Avery*, however, guides the Court to find the MAA sufficiently incorporated into the email announcement. First, the email announcement clearly and unequivocally referenced the Solution Channel program. (Doc. No. 19-3 at 3.) It stated: "In the unlikely event of a dispute not resolved through the normal channels, Charter has launched *Solution Channel*, a program that allows you and the company to efficiently resolve covered employment-related legal disputes through binding arbitration." (*Id.* (italics in original).) The program's name stands out in the announcement, and its purpose is plainly described. (*Id.*)

Second, the email called out the reference to the attention of the employees by placing the program name in italics and clearly stating the consequence of failing to opt out of the program within the deadline. (*Id.*) The announcement explained: "By participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim." (*Id.*)

---

[3] Defendants also argue that Ashirwad impliedly consented to the MAA on this basis. Although unnecessary, the Court nonetheless finds the analysis and findings in this section similarly applies to Ashirwad.

The email also expressly warned that "[u]nless you opt out of participating in Solution Channel within the next 30 days, you will be enrolled." (*Id.*) During the 30-day opt-out period, the Solution Channel webpage included instruction for opting out. (Doc. Nos. 19-2 at 4; 19-6 at 2.)

Third, the email contained a hyperlink to the Solution Channel webpage, which included a reference and link to the MAA and Program Guidelines under the heading "Key Documents". (Doc. No. 19-4 at 3.) The email also informed employees that more details and information about the program could be found in the hyperlinked webpage. (Doc. No. 19-1 at 3.) Because employees could access the additional information by simply clicking links in the email and corresponding website, the Court finds the terms of the MAA "was easily available to the contracting parties." *Avery*, 218 Cal. App. 4th at 66. *See also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (describing hyperlinks as "the twenty-first century equivalent of turning over" a document).

Plaintiffs' argument that the email announcement does not sufficiently incorporate the MAA because it does not contain the words "Mutual Arbitration Agreement" or "MAA" is unavailing. (Doc. No. 24 at 14.) "The contract need not recite that it incorporates another document, so long as it guides the reader to the incorporated document." *Avery*, 218 Cal. App. 4th at 66. The Court finds, for the reasons outlined above, the email adequately guides the reader to the MAA. *See generally Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (enforcing arbitration where agreement was in "a set of documents describing the company's dispute resolution program").

Because Lopez did not opt out within the designated time, the Court finds—as other courts reviewing this very email announcement and program have found—that he impliedly consented to the Solution Channel and MAA. *See Prizler v. Charter Commc'ns, LLC*, No. 3:18-CV-1724-L-MSB, 2019 WL 2269974, at *3 (S.D. Cal. May 28, 2019); *Harper v. Charter Commc'ns, LLC*, No. 219CV01749WBSDMC, 2019 WL 6918280, at *4 (E.D. Cal. Dec. 19, 2019).

### C. Whether the Agreement is Unconscionable is for the Arbitrator to Decide

Finally, Plaintiffs argue that the arbitration agreement is unenforceable because it is unconscionable. While Plaintiffs set forth arguments regarding the unconscionability of the arbitration agreement, none are specific to the MAA's delegation provision, which as Defendants pointed out in their opening brief, requires that "all disputes related to the arbitrability of any claim or controversy" be submitted to arbitration. (Doc. No. 19-5 at 2.) As the MAA "clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement to delegate arbitrability— the Delegation Provision—is itself unconscionable." *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015). Because Plaintiffs failed to "make any arguments specific to the delegation provision, and instead argued that the [Arbitration Agreements] as a whole [are] unconscionable, [the Court] need not consider that claim, because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question." *Id.* at 1133. Indeed, Plaintiffs failed to challenge Defendants' invocation of the delegation provision, and thus, have appeared to concede the point. There being no dispute about the delegation provision, the Court finds the question of unconscionability is for the arbitrator to decide.

### IV.   CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' motion to compel arbitration as to Plaintiffs Ashirwad, Lopez, and Marchesano. (Doc. No. 19.) Having found there is a valid arbitration agreement that covers the disputes in their cases, the Court **STAYS** this action, pursuant to 9 U.S.C. § 3, as to Plaintiffs Ashirwad, Lopez, and Marchesano only. The parties are **ORDERED** to provide this Court with a status report of the arbitration progress every 90 days from the date of this Order.

**IT IS SO ORDERED**.

Dated:  March 20, 2023

Hon. Anthony J. Battaglia
United States District Judge