UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERAIDOON ATHARI, an individual; JAMES HOGAN, an individual; an individual; OSCAR MARTINEZ, an individual; EDWARD MOORE, an individual; and DAVID SHERVEY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC, a Delaware Limited Liability Company; CHARTER COMMUNICATIONS, INC., a Delaware Corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 21-cv-02101-AJB-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION TO SEAL** and<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. Nos. 75, 77)** |

Before the Court is Defendants Charter Communications, LLC and Charter Communications, Inc.'s (collectively, "Charter" or "Defendants") motion to seal and motion for summary judgment. The motion to seal is unopposed. Plaintiffs Feraidoon Athari, James Hogan, Oscar Martinez, Edward Moore, and David Shervey (collectively,

"Plaintiffs")[1] filed an opposition, to which Defendants filed a reply. (Doc. Nos. 84, 87.) For the reasons set forth below, the Court **GRANTS** Defendants' motion to seal and **GRANTS IN PART** and **DENIES IN PART** their motion for summary judgment.

## I.   BACKGROUND

Charter is a telecommunications company that employed Plaintiffs as Multi-Dwelling Unit Sales Representatives ("MDU Reps") in California. (Doc. No. 1-3 at 5–6.) During their employment, Plaintiffs sold Charter's phone, internet, and cable services to members of the local community, and installed, connected, activated and troubleshot the equipment they sold. (*Id.* at 10–11.) Plaintiffs allege that Defendants misclassified them as outside salespeople exempt from overtime and meal and rest break laws. (*Id.* at 6.) Plaintiffs claim they are not considered exempt under California law because they did not spend more than 50% of their time selling goods or services away from Defendants' place of business. (*Id.*)

Plaintiffs filed a Complaint against Defendants in San Diego County Superior Court, which Defendants thereafter removed to federal court. (*Id.* at 5; Doc. No. 1) The Complaint raised eleven causes of action under California law: (1) failure to pay overtime wages, (2) failure to provide rest periods, (3) failure to provide meal periods, (4) failure to make semi-monthly payments, (5) failure to provide accurate itemized wage statements, (6) failure to pay accrued vacation time, (7) waiting time penalties, (8) unfair business practices in violation of the UCL, (9) theft of labor, (10) unjust enrichment, and (11) declaratory relief. (Doc. No. 1-3 at 5.)

In a prior order, the Court granted Defendants' motion for judgment on the pleadings and dismissed Plaintiffs' UCL claim. (Doc. No. 100.) All that remains for adjudication are Defendants' motion for summary judgment and attendant motion to seal.

---

[1] The three other plaintiffs in this action, Jagath Ashirwad, Eric Lopez, and Jeremiah Marchesano, have been compelled to arbitration as a result of the Court's March 20, 2023 Order granting Defendants' motion to compel arbitration (Doc. No. 80.) The Court thus stayed the action as to those plaintiffs. (*Id.*)

## II. MOTION TO SEAL

Defendants filed a motion to seal certain commission plans filed in connection with their motion for summary judgment and identified as Exhibits F and G (hereinafter, "Commission Plans"). (Doc. No. 75.) Plaintiffs did not file an opposition.

### A. Legal Standard

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 & n.7 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point. *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Courts have long acknowledged that the risk of competitive harm through disclosure of confidential and proprietary information warrants maintaining documents under seal. *See Nixon*, 435 U.S. at 598.

### B. Discussion

According to Defendants, compelling reasons support sealing of the Commission Plans because they contain confidential, competitively sensitive information regarding Charter's business and compensation plans. Defendants state that the Commission Plans contain information regarding pay rates and commission structures for Charter's sales employees, as well as information reflecting its business strategies related to compensation and marketing for its products and services. Defendants explain that a competitor with access to Charter's commission structure and compensation plans could undercut it in the marketplace, hire away its employees, and discern its internal decision-making and business strategies concerning compensation and marketing.

Upon review of Defendants' motion and the exhibits at issue, the Court agrees with Defendants that public disclosure of the Commission Plans could cause Charter competitive harm and give its competitors an unfair advantage. Thus, the Court finds compelling reasons support sealing of the Commission Plans. *See Nixon*, 435 U.S. at 598

(courts may ensure records are not used "as sources of business information that might harm a litigant's competitive standing"); *Sullivan v. Deutsche Bank Americas Holding Corp.*, No. 08CV2370, 2010 WL 3448608, at *2 (S.D. Cal. Aug. 31, 2010) (finding the "likelihood of improper use by competitors and the proprietary nature of the confidential information" was a compelling reason to seal documents).

Accordingly, the Court **GRANTS** Defendants' motion to seal Exhibits F and G filed in connection with their motion for summary judgment.

### III.     MOTION FOR SUMMARY JUDGMENT

**A. Legal Standard**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2] A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file," to show that a genuine issue of disputed fact remains. *Id.* at 324. "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

//
//

---

[2] Internal quotations, citations, and alterations are omitted from the cases cited in this Order unless otherwise indicated.

### B. Discussion

Defendants seek summary judgment on the entirety of Plaintiffs' Complaint. As an initial matter, the Court notes that while Plaintiffs filed an opposition, they chose not to respond to Defendants' arguments that they are entitled to summary judgment on Plaintiffs' sixth, ninth, tenth, and eleventh causes of action, as well as their claim for punitive damages. Thus, the Court finds those claims—failure to pay accrued vacation time, theft of labor, unjust enrichment, declaratory relief, and punitive damages—abandoned. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (noting that Jenkins "abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment."). Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to those claims.

The Court now turns to the parties' arguments on Plaintiffs' remaining claims—their first, second, third, fourth, fifth, and seventh causes of action—and discusses each in turn.

#### 1) Failure to Pay Overtime Wages – Claim 1

Defendants argue that Plaintiffs were properly classified as an exempt outside salesperson, and thus, they are entitled to summary judgment on Plaintiffs' claim for overtime wages, as well all the remaining claims because they too depend on the misclassification issue. The Court disagrees.

California law exempts "outside salespersons" from overtime requirements. Cal. Code Regs. tit. 8, § 11010(1)(C). "The employer bears the burden of proving the employee's exemption." *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794–95 (1999). An outside salesperson is an employee who "customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." *Id.* § 11010(2)(J). In contrast to federal law, California law "takes a purely quantitative approach," looking to the amount of time a person is "engaged in sales activities outside the workplace" rather than looking to "the primary function for which the person is employed." *Ramirez*, 20 Cal. 4th at 797.

Whether an activity qualifies as exempt is a mixed question of law and fact. *See id.* at 803 n.5. The court should therefore "itemize the types of activities that it considers to be sales related, and the approximate average times that it finds the employee spent on each of these activities." *Id.* "Such itemization allows the court to resolve whether the employee is exempt—a question of law." *Stickles v. Atria Senior Living, Inc.*, 642 F. Supp. 3d 1104, 1110 (N.D. Cal. 2022).

Defendants argue that even assuming Plaintiffs spent the majority of their work time installing and troubleshooting services, Plaintiffs were properly classified as exempt outside salespersons because those tasks are sales-related activities.[3]

Instructive here, the California Supreme Court in *Ramirez* considered whether delivering and restocking water bottles were sales activities and concluded—despite the employer's argument that a failure to deliver would lead to a loss in sales—that they were not. *See* 20 Cal. 4th at 802. The court explained:

> [T]he evidence is uncontroverted that Ramirez performed both sales and delivery functions for Yosemite. Delivery of preordered water bottles or the restocking of "empties" is not a sales activity in the conventional meaning of the word—one who *only* performed these delivery tasks could not be considered a salesperson. It is true, as Yosemite points out, that failure to properly deliver the product would lead to loss of the customer, but that does not make such delivery a sales activity, any more than an attorney's preparation of a legal brief in order to satisfy and thereby retain a client is a sales activity.

*Id.* (emphasis in the original).

Based on the foregoing, the Court rejects Defendants' assertions that the applicable analysis looks to the employee's subjective motivations or purpose for conducting the activity. Rather, following the rationale in *Ramirez*, the Court finds that the activity at issue

---

[3] To be clear, Defendants do not seek summary judgment based on the number of hours Plaintiffs spent installing and troubleshooting the services they sold. (Doc. No. 77-1 at 9.) The parties' briefs focus solely on whether Plaintiffs' installing and troubleshooting of services amount to "selling" for purposes of the outside salesperson exemption.

must be examined objectively and in isolation, to determine whether "one who *only* performed" the activity in question could be "considered a salesperson" within "the conventional meaning of the word." *See id.* (emphasis in original).

As to installing services, the Court finds it is not a sales activity in the conventional meaning of the word—one who only performed installation tasks could not be considered a salesperson. Similarly, as to troubleshooting services, it is not a sales activity in the conventional meaning of the word—one who only performed troubleshooting tasks could not be considered a salesperson. Tellingly, Defendants employ technicians who perform only these installation and troubleshooting tasks, yet make no argument that they could be considered salespersons. (Doc. No. 77-1 at 11.) Nor would such argument be defensible.

Moreover, the Court agrees with Plaintiffs that installing or troubleshooting services sold are analogous to the delivering and restocking of water bottles the *Ramirez* court found were not sales activities. In *Ramirez*, the plaintiff:

> would carry the bottles into a business or place of residence, exchange full for empty bottles, and refill and replace other stock and supplies. He would also rotate bottles on his truck, check the bottles for leaks and foreign objects, and carry the bottles to the customer's house. For some customers, he would also rotate the spare water bottles, wipe off the tops and place the bottles in the coolers. He would also do minor service on the coolers.

20 Cal. 4th at 791.

The Court finds these activities akin to the installation and troubleshooting services Plaintiffs performed for Defendants. Such work occurs only after a sale has been actualized. Like delivering water bottles, an installation could not happen until a sale was completed and entered into Defendants' billing system, and equipment was assigned to the client's account. And like restocking water bottles (which occurs after a sale was made and the product, water, was consumed by the customer), troubleshooting services occur after a sale was made, and generally after equipment was installed and the customer's services were activated. Additionally, Ramirez's tasks of placing of water bottles in the customers' coolers is similar to Plaintiffs' troubleshooting tasks of installing self-installation kits when

customers were unable to do so themselves. Moreover, even if the failure to install or troubleshoot services could lead to the loss of the customer, *Ramirez* teaches that such consequence does not make a task a sales activity "any more than an attorney's preparation of a legal brief in order to satisfy and thereby retain a client is a sales activity." 20 Cal. 4th at 802.

Instead of addressing the aforementioned similarities, Defendants argue that *Ramirez* is nonetheless distinguishable because: (1) it was undisputed that Ramirez was required to perform both sales and delivery functions; (2) the deliveries were pre-ordered and had nothing to do with the plaintiff's personal sales; and (3) the employer in *Ramirez* employed solicitors whose principal task was to sign up new customers. None of Defendants' points, however, appear in the *Ramirez* court's analysis of whether delivering and restocking water bottles were sales activities. The Court therefore does not find these claimed differences consequential.

In any event, *Ramirez* stated that "the evidence is uncontroverted that Ramirez *performed* both sales and delivery functions for Yosemite." 20 Cal. 4th at 802 (emphasis added). Contrary to Defendants' claim, nowhere in the case does it state that the evidence was undisputed that Ramirez "was *required* to perform both 'sales and delivery functions.'" (Doc. No. 87 at 10 (emphasis in Defendants' reply brief).) Defendants' latter points also fail because Ramirez's sales motivations and the existence of other employees specifically tasked with signing up new customers are irrelevant to the dispositive inquiry in the case: whether delivering and restocking water bottles, examined objectively and in isolation, are sales activities with the conventional meaning of the word. *See Ramirez*, 20 Cal. 4th at 802.

Also instructive, the *Ramirez* court indicated that another way to determine whether an activity was directly related to sales was whether one *must* perform such activity to attempt a sale. *See, e.g., id.* at 801 ("If a salesperson must travel one hour to destination A in order to attempt a sale, then surely the most reasonable interpretation of the wage order is to count the hour of travel time as time spent 'selling.'"). Here, the Court additionally

finds that because a sale of Charter's services may be attempted without performing installation or troubleshooting services, the time spent performing such tasks does not count as selling. Tellingly, Plaintiffs sold Charter's services, and Defendants maintain that they were not required to perform installation or troubleshooting services for the sale.

Based on the foregoing, the Court finds that installing or troubleshooting services are not sales activities within the conventional meaning of the word. *See id.* At best, the activities are incidental to sales rather than directly related, and work incidental to sales is not exempt in California. *See id.* at 797 (State law "does not contain any provision that reclassifies intrinsically nonexempt nonsales work as exempt based on the fact that it is incidental to sales. The language of the state exemption only encompasses work directly involved in 'selling . . . items or obtaining orders or contracts.'"). Accordingly, Defendants' motion for summary judgment on the basis that Plaintiffs' installing and troubleshooting of services constitute "selling" for purposes of the outside salesperson exemption is **DENIED**.

Moreover, because Defendants did not, in this motion, challenge Plaintiffs' claim that they spent more than fifty percent of their work time installing and troubleshooting services, nor did they meaningfully engage with *Ramirez's* multi-factor test on this issue,[4] Defendants have not established they are entitled to summary judgment on this alternative basis.

### 2) Failure to Provide Meal and Rest Breaks – Claims 2 and 3

Next, Defendants argue that, even assuming Plaintiffs were improperly classified, they are entitled to summary judgment on Plaintiffs' meal and rest break claims because

---

[4] To determine the number of hours worked in sales-related activities (the quantitative definition of outside salesperson), the court should consider the following factors: (1) how the employee actually spends his or her time; (2) whether the employee's practice diverges from the employer's realistic expectations; (3) whether there was any concrete expression of employer displeasure over an employee's substandard performance; and (4) whether these expressions were themselves realistic given the actual overall requirements of the job. *Ramirez*, 20 Cal. 4th at 802. Defendants' briefs assert only that Plaintiffs' installing and troubleshooting of services diverge from Charter's realistic expectations. They do not address the other factors.

Charter's lack of a written policy expressly authorizing breaks does not constitute a violation and Plaintiffs have not presented evidence that their supervisors prevented or discouraged them from taking breaks.

California law "obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1018 (2012) An employer satisfies their duty to provide meal and rest breaks "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Id.* at 1040.

Here, Plaintiffs point to a declaration from Ziren Coelho ("Coelho"), a supervisor for MDU Reps. (Doc. No. 85-3.) Coelho attests that he has "never personally relieved any MDU Rep for their meal break or their rest break." (*Id.* at ¶ 25.) He also stated that although their policy for breaks was "take them if you're able to," if one of his MDU Reps receives a call from a customer, "they are expected and instructed to answer it." (*Id.*) Notably, Coelho expressed, "Charter instructed [him] and other supervisor[s] to encourage our MDU Reps to spend as much time as possible selling and installing the services that Charter offered". (*Id.*) Consistent with Coelho's statements, Plaintiffs James Hogan's and Oscar Martinez's testimonies indicate that although no one expressly told them that they could not take breaks, they felt comfortable taking a break only when they could, and often only briefly and in their cars, so as not to neglect their work responsibilities. (Doc. No. 77-3 at 102–05, 136–39.)

Considering the above evidence and drawing all inferences therefrom in Plaintiffs' favor, the Court finds there is a genuine issue of material fact as to whether Defendants impeded or discouraged Plaintiffs from taking their break. A reasonable jury could find that because Defendants expected MDU Reps like Plaintiffs to answer calls, regardless of whether they were on break, and encouraged them to spend as much time as possible working, they have not satisfied their meal and rest period obligations. Accordingly, the Court **DENIES** Defendants' summary judgment motion on this basis.

### 3) Failure to Make Semi-Monthly Payments – Claim 4

Defendants also assert that even assuming Plaintiffs were improperly classified as outside salespersons, they are entitled to summary judgment on Plaintiffs' failure to make semi-monthly payments under Labor Code Section 204. Specifically, Defendants contend that Plaintiffs have no right of action under Section 204. In response, Plaintiffs argue that they made a mistake and ask the Court to grant them leave to amend this cause of action to be pled under Section 210 instead.

While Federal Rules of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires," the policy toward liberally granting amendment "must be tempered with considerations of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Schlacter-Jones v. Gen. Tel. of California*, 936 F.2d 435, 443 (9th Cir. 1991).[5]

Apart from Plaintiffs asserting—without explanation—that they made a mistake and Defendants would not suffer prejudice, Plaintiffs have made no attempt at showing that they merit leave to amend at this stage. Specifically, Plaintiffs offer no reason as to why their mistake or delay in seeking leave to amend is justified when discovery has closed, and the case is pending resolution of Defendants' summary judgment motion. The Court also finds that the timing of Plaintiffs' request, that is, seeking the amendment in its opposition to summary judgment, causes prejudice to Defendants. *See id.* ("A motion for leave to amend is not a vehicle to circumvent summary judgment.") Most notably, Plaintiffs have not shown that their proposed amendment would not be futile. Indeed, Defendants point out that "[p]enalties under Section 210 can only be recovered in administrative proceedings before the Labor Commissioner or in a PAGA action and Plaintiffs have not alleged a claim under PAGA." (Doc. No. 87 at 11 n.10.) *See also*

---

[5] This case was abrogated on other grounds by *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683 (9th Cir. 2001).

*Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011), aff'd, 546 F. App'x 613 (9th Cir. 2013) ("There is nothing in section 204 or 210 that indicates, in clear understandable, unmistakable terms, that a private right of actions exists for violations of section 204.").

Accordingly, because Plaintiffs have failed to show that they have a private right of action under Section 204 and considerations of undue delay, prejudice to Defendants, and futility overcome the presumption of granting leave to amend this claim, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' Section 204 claim and **DENIES** Plaintiffs' belated and unjustified request for leave to amend.

### 4) Failure to Provide Accurate Itemized Wage Statements and Waiting Time Penalties – Claims 5 and 7

Lastly, Defendants argue that even if Plaintiffs were improperly classified, they are entitled to summary judgment on Plaintiffs' claims for failure to provide accurate wage statements and waiting time penalties based on their defense of "good faith belief." (Doc. No. 77-1 at 28.) Defendants, however, have cited no evidence—conclusive or otherwise—to prove they are entitled to summary judgment on this defense. Accordingly, the Court **DENIES** Defendants' motion for summary judgment on their good faith affirmative defense.

//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' motion to seal and **GRANTS IN PART** and **DENIES IN PART** their motion for summary judgment.[6] (Doc. Nos. 75, 77.) Accordingly, the Court enters the following orders.

- Defendants' motion to seal Exhibits F and G at Doc. No. 76 is **GRANTED**. The Clerk of Court is directed to file those documents under seal.
- Plaintiffs' fourth, sixth, ninth, tenth, and eleventh causes of action, as well as their claim for punitive damages are **DISMISSED**.
- Plaintiffs' first, second, third, fifth, and seventh causes of action remain for trial.
- Pursuant to the Magistrate Judge's Order (Doc. No. 119), the parties are **DIRECTED** to contact the Magistrate Judge's chambers within 3 days of the date of this Order.
- Counsel must comply with the pre-trial disclosure requirements of Fed. R. Civ. P. 26(a)(3) no later than April 11, 2024.
- The parties must meet and confer no later than April 18, 2024, and prepare a proposed pretrial order in the form as set forth in Civ. L. R. 16.1.f.6.
- Objections to pre-trial disclosures must be filed no later than April 25, 2024.
- The Proposed Final Pretrial Conference Order as described above must be prepared, served, and lodged no later than May 16, 2024.
- The final Pretrial Conference is scheduled for May 23, 2024 at 2:00 p.m.

**IT IS SO ORDERED**.

Dated: March 18, 2024

Hon. Anthony J. Battaglia
United States District Judge

---

[6] The Court acknowledges that the parties' raised objections to certain evidence in their respective briefs. However, because the Court reaches its rulings without reliance on the evidence objected to by the parties, the Court need not consider the evidentiary objections and hereby denies them as moot.